UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

In re:

SHELTON RICARDO BRAXTON
JANICE DELORES BRAXTON,

           Debtors.

                               CHAPTER 13

                               CASE NO. 11-71784-FJS

STATEBRIDGE COMPANY, LLC AS SERVICER FOR
THE BANK OF NEW YORK MELLON TRUST
COMPANY, NATIONAL ASSOCIATION AS GRANTOR
TRUSTEE OF THE PROTIUM MASTER GRANTOR
TRUST,

           Plaintiff/Movant.

vs.

SHELTON RICARDO BRAXTON
JANICE DELORES BRAXTON
MICHAEL P. COTTER, TRUSTEE,

           Defendants.

## <u>MOTION FOR RELIEF</u>

### <u>NOTICE</u>

YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)

IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT. UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.

IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.

YOU WILL BE NOTIFIED SEPARATELY BY THE CLERK OF THE HEARING DATE ON THE MOTION.

### <u>NOTICE FROM SAMUEL I. WHITE, P. C.</u>

PURSUANT TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT, WE ADVISE YOU THAT SAMUEL I. WHITE, P. C., COUNSEL FOR THE PLAINTIFF/MOVANT, IS A DEBT COLLECTOR, ATTEMPTING TO COLLECT THE INDEBTEDNESS REFERRED TO HEREIN, AND ANY INFORMATION WE OBTAIN FROM YOU WILL BE USED FOR THAT PURPOSE.

D. Carol Sasser, Esquire
Counsel for Plaintiff
Samuel I. White, P.C.
5040 Corporate Woods Drive
Suite 120
Virginia Beach, VA 23462
State Bar #28422
(757) 490-9284

## MOTION FOR RELIEF

The Motion of Statebridge Company, LLC as servicer for The Bank of New York Mellon Trust Company, National Association as Grantor Trustee of the Protium Master Grantor Trust, by Counsel, hereby moves the Court for relief from the automatic stay and in support thereof represents unto the Court:

1.      This Court has Jurisdiction over this proceeding pursuant to 28 U. S. C. Sections 157 and 1334 and 11 U. S. C. 362 (d), and that this matter is a core proceeding.

2.      The Debtor(s) filed a Petition under Chapter 13 of the Bankruptcy Code on April 16, 2011.

3.      The Debtor(s) is/are the owner(s) of the real property located at 3016 Tournament Drive, Chesapeake, VA 23323, which property is described as:

> All that certain lot, piece or parcel of land, with the buildings and improvements thereon, situate in the Deep Creek Borough of the City of Chesapeake, Virginia, being known, numbered and designated as Lot 1036, as shown on that certain plat of Camelot Section 4-d, duly recorded in the Clerk's Office of the Circuit Court of the City of Chesapeake, Virginia, in Plat Book 58, at Page 11.

4.      Plaintiff is the holder of a certain Deed of Trust Note dated September 18, 2007, which Note is secured by a Deed of Trust of even date therewith and duly recorded. The Note was then modified incident to a Modification Agreement dated April 15, 2009. The original noteholder was EquiFirst Corporation. There is a blank endorsement of the Note from EquiFirst Corporation with the current holder of the Note being The Bank of New York Mellon Trust Company, National Association as Grantor Trustee of the Protium Master Grantor Trust. Statebridge Company, LLC is the servicer incident to the loan pursuant to the Limited Power of Attorney establishing the servicing relationship between Statebridge Company, LLC and The Bank of New York Mellon Trust Company, National Association. The firm of Samuel I. White, P.C. presently maintains the original note in its file incident to its representation of the noteholder. A copy of the Note, Deed of Trust, Modification Agreement, and Limited Power of Attorney are attached hereto and incorporated herein by reference.

01-003128-11/cad

5.    The account is in arrears for 4 monthly post-petition mortgage installments, as modified, with the post-petition reinstatement through October, 2011 being $4,785.24, calculated as follows:

| | |
|---|---|
| 4 monthly payments (07/01/11-10/01/11) @ $969.25/month | $3,877.00 |
| Accrued Late Charges | 108.24 |
| Bankruptcy Fees and Costs - Motion For Relief | 800.00 |
| Total | $4,785.24 |

6.    Post-petition application of payments:

| Date posted to | Payment type and/or # (if available) | Amount | Post-petition month applied |
|---|---|---|---|
| 05/05/2011 | | $969.25 | 05/11 |
| 07/06/2011 | | $969.25 | 06/11 |

7.    The unpaid principal balance due on said note as modified by the Modification Agreement is $126,822.96.

8.    It is the opinion of the Plaintiff that the Debtors are financially unable to maintain said obligation and that Plaintiff will suffer irreparable injury, loss and damage if it is not permitted to foreclose upon its security interest; otherwise Plaintiff is without adequate protection.

WHEREFORE, Plaintiff prays that it be granted relief from the provisions of the automatic stay with regard to the said real property in order to pursue its rights pursuant to the terms of the Note, as modified by the Modification Agreement and Deed of Trust, to include the initiation of foreclosure proceedings, as well as to commence and complete any lawful action necessary to obtain complete possession of the property subsequent to a foreclosure and further requests that the fourteen (14) day stay be waived incident to any Order entered incident to the Motion for Relief herein.

STATEBRIDGE COMPANY, LLC AS SERVICER FOR THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION AS GRANTOR TRUSTEE OF THE PROTIUM MASTER GRANTOR TRUST

By:  /s/ Robert A. Jones for D. Carol Sasser
Of Counsel
Samuel I. White, P. C.
D. Carol Sasser, Esquire, VSBN 28422
Robert A. Jones, Esquire, VSBN 71123
5040 Corporate Woods Drive, Suite 120
Virginia Beach, VA 23462

01-003128-11/cad

CERTIFICATE

I certify a true copy of the foregoing Motion was served via electronic notice this 12th day of October, 2011, to Michael P. Cotter, Trustee, 870 Greenbrier Circle, Suite 402, Chesapeake, VA 23320 and to Steve C. Taylor, Esquire, Counsel for Debtors, 133 Mount Pleasant Road, Chesapeake, VA 23322; and was mailed this 12th day of October, 2011 to Shelton Ricardo Braxton and Janice Delores Braxton, Debtors, 3016 Tournament Drive, Chesapeake, VA 23323.

**/s/ Robert A. Jones for D. Carol Sasser**
Samuel I. White, P. C.

**01-003128-11/cad**

# NOTE

| September 18, 2007 | Chesapeake | VA |
|---|---|---|
| (Date) | (City) | (State) |

**3016 Tournament Drive, Chesapeake, VA 23323**
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 128,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is EquiFirst Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.400%. The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on November 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of it's scheduled due date and will be applied to interest before principal. If on, October 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at
HomEq Servicing, PO Box 79230, City of Industry, CA 91716
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 975.16 .

## 4. BORROWER'S RIGHT TO PREPAY

**(A) Prepayment**    I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**(B) Prepayment Penalty**

If I prepay this loan in full within  3 year(s) from the date of this loan, I agree to pay a prepayment penalty in an amount equal to 2.00% of the balance of the loan outstanding on the date of prepayment. This amount, known as a prepayment penalty, will be in addition to any other amounts I may owe under the provisions of the Note or the Security Instrument that secures the Note. If I make a prepayment in full on or after the 3rd anniversary date of the Note, the Note Holder will impose no prepayment penalty.

Mulitstate Fixed Rate Note-Single Family
(FF5ND 2/00    (Virginia Version)

Initials *JB*

— redacted

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

FFSN2VA

Page 2 of 3

Initials _JB_

-redacted

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred ), without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED**

_Janice D. Braxton_ (Seal)                    _____ (Seal)
Janice D. Braxton    -Borrower                              -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower                              -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower                              -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower                              -Borrower

This is to certify that this is the Note described in and secured by a Deed of Trust dated September 18, 2007 , on the Property located in Chesapeake, Virginia.

My Commission Expires:

Notary Public

Page 3 of 3

**BEVERLY TAYLOR**
Notary Public
Commonwealth of Virginia
My Commission Expires October 31, 2009
Commission ID# 213314

It is hereby certified that as of 10/11/11
the original note is in the file of Samuel I. White, P.C.
DCS

-redacted

## Note Endorsements

Borrower(s): Janice D. Braxton
Property Address: 3016 Tournament Drive, Chesapeake, VA  23323

Without Recourse, Pay to the Order of:

EquiFirst Corporation

By: _Karen Ruff_____

_Karen Ruff_

Vice President

EF5nendr (12/05)                              Page 1 of 1



BK 7 2 3 1 PG 6 6 4 6                                                vz

Return To:
EquiFirst Corporation
500 Forest Point Circle
Charlotte, NC 28273

Tax Map Reference #:
0241008010360
RPC/Parcel ID #:
0241008010360

Prepared By:
Beverly Newman
500 Forest Point Circle
Charlotte, NC 28273

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by Janice D Braxton, a married person

, as

Borrower (trustor), to Beverly A English P.C
111 Mill Creek Pkwy Ste 200, Cheasepeake, VA 23323

, as

Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3047  1/01
Wolters Kluwer Financial Services
VMP ®-6A(VA) (0705)
Page 1 of 14                          Initials: JB

Record & Return To
BEVERLY A. ENGLISH, P.C.
111 MILL CREEK PKWY. STE. 200
CHESAPEAKE VA 23323

—redacted

(A) "Security Instrument" means this document, which is dated September 18, 2007 together with all Riders to this document.

(B) "Borrower" is Janice D Braxton, a married person

Borrower is the trustor under this Security Instrument.

(C) "Lender" is EquiFirst Corporation

Lender is a Corporation
organized and existing under the laws of North Carolina
Lender's address is 500 Forest Point Circle
Charlotte, NC 28273

(D) "Trustee" is Beverly A English P.C

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is 111 Mill Creek Pkwy Ste 200, Cheasepeake, VA 23323
"Trustee" is Beverly A English P.C

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is 111 Mill Creek Pkwy Ste 200, Cheasepeake, VA 23323

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated September 18, 2007
The Note states that Borrower owes Lender one hundred twenty-eight thousand and 00/100                                                                                      Dollars
(U.S. $128,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2037       . The interest rate stated in the Note is 8.400

                                                             percent (              8.400 %).
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in accordance with the attached Adjustable Rate Rider.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

VMP ®-6A(VA) (0705)                Page 2 of 14          Initials:          Form 3047   1/01



BK 7 2 3 1 PG 6 4 8

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider  ☐ Biweekly Payment Rider  ☒ Other(s) [specify]
PrePayment Penalty Rider

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

VMP ®-6A(VA) (0705)                    Page 3 of 14        Initials:            Form 3047   1/01

-redacted

BK 7231 PG 649

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                    [Type of Recording Jurisdiction]
of Chesapeake City                               [Name of Recording Jurisdiction]:
See Attached Exhibit A

which currently has the address of 3016 Tournament Drive

[Street]

Chesapeake/Chesapeake City             [City/County], Virginia 23323          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

VMP ®-6A(VA) (0705)                    Page 4 of 14          Initials:          Form 3047    1/01

redacked

BK 7 2 3 1 PG 6 5 0

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such

Initials:



-redacted

BK 7231 PG 651

amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the

VMP ®-6A(VA) (0705)                    Page 6 of 14         Initials: _____         Form 3047  1/01


— redacted

BK 7 2 3 1 PG 6 5 2

payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   **7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or

VMP ®-6A(VA) (0705)                              Page 7 of 14                              Form 3047  1/01

Initials: JB

− redacted

BK 7 2 3 1 PG 6 5 3

condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage



BK 7 2 3 1 PG 6 5 4

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

VMP ®-6A(VA) (0705)                    Page 9 of 14            Initials: _____            Form 3047    1/01



—redacted

BK 7231 PG 655

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the

VMP ®-6A(VA) (0705)                    Page 10 of 14                Initials: _JB_            Form 3047  1/01

 redacted

BK 7 2 3 1 PG 6 5 6

permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of

VMP ®-6A(VA) (0705)                    Page 11 of 14          Initials: JB          Form 3047  1/01



-redacted

QK 7 2 3 1 PG 6 5 7

Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

VMP ®-6A(VA) (0705)                    Page 12 of 14              Initials:              Form 3047  1/01

−redacted

BK 7 2 3 1 PG 6 5 8

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

VMP ®-6A(VA) (0705)                    Page 13 of 14                    Initials: _____                    Form 3047   1/01



—redacted

BK7231PG659

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR
THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR
CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
Janice D. Braxton          -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                     -Borrower


STATE OF VIRGINIA,          Chesapeake                      County, ss:
    The foregoing instrument was acknowledged before me this    9/18/07          by
Janice D. Braxton

My Commission Expires:

_____
Notary Public

VMP ®-6A(VA) (0705)                        Page 14 of 14              Form 3047   1/01

BEVERLY TAYLOR
Notary Public
Commonwealth of Virginia
My Commission Expires October 31, 2009
Commission ID # 213314

—redacted

MAY. 26. 2009  2:04PM   hOMEQ                              NO. 539    P. 3

Prepared by and return to:
HomEq Servicing
Attn: Mod Imaging-CA3507
4837 Watt Avenue
North Highlands, CA  95660

## Modification Agreement

This Modification Agreement ("Agreement") is made and entered into as of this 15th day of April, 2009 by and between HomEq Servicing ("HomEq") and JANICE D BRAXTON ("Borrower")

Whereas, HomEq is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated as of 09/18/2007, executed by Borrower or Borrower's predecessor-in-interest in the original principal amount of $128,000.00.

WHEREAS, the Note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest and is secured by either a deed of trust or mortgage ("Security Instrument") dated as of 09/18/2007. The Security Instrument encumbers certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument).

WHEREAS, due to adverse economic circumstances, Borrower has requested that HomEq adjust the terms of the Note to permit Borrower to meet Borrower's Loan obligations in a full and in a timely manner.

WHEREAS, the requested adjustment will benefit all parties to the Loan and any junior lien holder by providing the Borrower an opportunity to meet the Loan obligations in a manner intended to help the Borrower avoid default on the Loan and the necessity of foreclosure on the Property.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.   NOTE MODIFICATIONS:
(a)    Outstanding Debt:  Borrower agrees that the unpaid principal balance due on the Note of $127,003.83 shall be adjusted to $131,404.18 ("New Balance"), to reflect the amount of unpaid interest, late charges, fees and costs, advances for unpaid property taxes and/or insurance premiums (if applicable), less any amounts forgiven or deferred, as reflected on Attachment 'A'.

Borrower agrees to pay the New Balance to HomEq and has no defenses, claims or offsets with respect thereto. Interest will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.

(b)    New Interest Rate:  Effective on 04/01/2009, Borrower's rate of interest will be 5.000%.   The date on which the interest rate change is next scheduled to occur is hereby changed to 04/01/2014 . Subsequent interest rate changes will resume based on the frequency provided for in the Loan documents.

(c)    New Monthly Payments; Payment Adjustments:  Effective with Borrower's monthly payment due 05/01/2009, Borrower's monthly Loan payment will be $721.58. This payment amount does not include additional amounts which may also be due for the payment of taxes and insurance premiums. The taxes and insurance payment amount will be due monthly, together with Borrower's scheduled Loan payment. Borrower agrees that a full payment hereunder and with respect to the Loan shall only be deemed to have been made when funds remitted include the required scheduled Loan payment and monthly portion of taxes and insurance premiums. The monthly payment will adjust in the month following any interest rate change, if applicable.

(d)    Interest Rate and Payment Changes:  Borrower's monthly payment and interest rate remains subject to change during the modification term, as long as the change results in an interest rate that is lesser or equal to the New Interest Rate. Should this condition occur, interest rate and payment changes will take place based on the time frames contained in the original loan documents. A notice of payment change will be sent before the change takes place.



Univ_Mod_Agreement – Rev 3.26.09
Page 1

—redacted

MAY. 26. 2009   2:04PM   HOMEQ SERVICI                                    NO. 539   P. 4

**2.   ESTABLISHMENT OF IMPOUND/ESCROW ACCOUNT:**

Borrower acknowledges that HomEq will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence. Borrower has been notified of the estimated initial monthly amount that will be due for taxes and insurance and will be notified promptly after execution hereof of the final monthly amount that will be due for these items, if different. The Borrower will be notified of any subsequent changes as they occur.

**3.   NO OTHER CHANGES:**

Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations and conditions in the Note and the Security Instrument remain unmodified and in full force and effect without any defense, counterclaim, right or claim of set-off. None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein, nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument, whether such rights or remedies arise herein or by operation of law.

**4.   ENTIRE AGREEMENT:**

This Agreement constitutes the entire Agreement between the parties regarding the subject matter hereof. Except as otherwise provided herein, this Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether written or oral, of the parties hereto, relating to the Note and Security Instrument.

**5.   VOLUNTARY EXECUTION:**

Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing below Borrower acknowledges and agrees that Borrower has voluntarily signed this Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Modification Agreement as of the date first above written.

BORROWER

Signature: X _Janice D. Braxton_   Date: X _May 27. 2009_

Name: X _Danice D. Braxton_

BORROWER

Signature: _____   Date: _____

Name: _____

HOMEQ SERVICING

Signature: _____   Date: **MAY 2 9 2009**

Name: Robert L. Minnich, Vice President

Title: _____

Univ_Mod_Agreement - Rev 3.26.09
Page 2

— redacted

Prepared by and return to:
Samuel I. White, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, VA 23462

FILE 01-003128-11
Braxton

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., <u>Grantor</u>, hereby grants, assigns and transfers to **THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION AS GRANTOR TRUSTEE OF THE PROTIUM MASTER GRANTOR TRUST, <u>Grantee</u>,** all beneficial interests under that certain deed of trust dated **September 18, 2007,** executed by JANICE D. BRAXTON to BEVERLY A. ENGLISH, P.C., Trustees, in the amount of **$128,000.00,** recorded in Deed Book 7231, at page 645 in the office of the Clerk of the Circuit Court of the City Of Chesapeake, Virginia, describing land therein as: **All that certain lot, piece or parcel of land, with the buildings and improvements thereon, situate in the Deep Creek Borough of the City of Chesapeake, Virginia, being known, numbered and designated as Lot 1036, as shown on that certain plat of Camelot Section 4-D, duly recorded in the Clerk's Office of the Circuit Court of the City of Chesapeake, Virginia, in Plat Book 58, at Page 11.**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

IN WITNESS WHEREOF, Mortgage Electronic Registration Systems, Inc. has caused this Assignment to be executed in its name by a duly authorized officer and agent, pursuant to authority heretofore granted and not withdrawn as of the date hereof.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By:
Name: Karen L Shoup
Assistant Secretary

COMMONWEALTH OF Pennsylvania
CITY/COUNTY OF Crawford, to-wit:

Before me, the undersigned authority, on this day personally appeared
KAREN L Shoup , Assistant Secretary, of Mortgage Electronic Registration Systems, Inc. known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed and as the act and deed of said entity and in the capacity therein stated.

Given under my hand and seal this 18th day of March , 20 11 .

Notary Public Tammy L. Witherow (SEAL)

My Commission Expires: 01-26-2014
GPIN/TAX MAP: 0241008010360

NOTARIAL SEAL
TAMMY L WITHEROW
Notary Public
TITUSVILLE CITY, CRAWFORD CNTY
My Commission Expires Jan 26, 2014

1

Reception #:D1049767, 05/26/2011 at 09:04:28 AM, 1 OF 2, Rec Fee $16.00
Arapahoe County CO Nancy A. Doty, Clerk & Recorder

Rtnt ð.

**STATEBRIDGE COMPANY LLC**
4600 S SYRACUSE ST
STE 700
DENVER, CO 80237

Ψ

Limited Power of Attorney

This Limited Power of Attorney is executed as of September 23, 2010, by The Bank of New York Mellon Trust Company, National Association as grantor trustee of the Protium Master Grantor Trust having an office at 601 Travis Street, 16th Floor, Houston, TX 77002 ("Owner"), appointing as attorney-in-fact Statebridge Company, LLC having an office at 4600 S. Syracuse Street, Suite 700, Denver, CO 80237 ("Statebridge").

R E C I T A L S:

A.     Owner is the holder of certain mortgage loans and/or REO properties, which are serviced by DHM Mortgage Servicing LLC ("DHM"), pursuant to a Servicing Agreement ("DHM Servicing Agreement") effective as of April 29, 2010;

B.     DHM and Statebridge entered into a Servicing Agreement ("Statebridge Servicing Agreement") effective as of July 9, 2010, pursuant to which Statebridge will sub-service certain mortgage loans and/or REO properties as more particularly described on the schedule provided to Statebridge by Owner (collectively, "Mortgage Loans") on behalf of the Owner;

C.     In connection with Statebridge's performance of such functions, Statebridge has requested that the Owner authorize Statebridge to execute certain documents on the Owner's behalf as further described herein.

*Statebridge is authorized to act as attorney-in-fact in the following limited circumstances:*

Owner hereby appoints Statebridge as its attorney-in-fact, with full power of substitution, to exercise at any time all or any of the following powers: (i) to execute on behalf of Owner any documents or instruments necessary to collect payments against, to liquidate or cancel any mortgage subject to the Statebridge Servicing Agreement in accordance with such Statebridge Servicing Agreement, and to otherwise manage and service the Mortgage Loans and properties in accordance with the Statebridge Servicing Agreement; (ii) to execute on behalf of Owner any assignments, documents or instruments necessary to assign, convey, or otherwise transfer its interest in the Mortgage Loans as per the Statebridge Servicing Agreement; (iii) to execute documents on behalf of Owner in connection with any bankruptcy or receivership of a mortgagor whose Mortgage Loan is subject to the Statebridge Servicing Agreement; (iv) to execute on behalf of Owner any documents necessary to carry out foreclosure of any mortgaged property securing a Mortgage Loan subject to the Statebridge Servicing Agreement, (v) to execute on behalf of the Owner any necessary documents to effectuate an eviction, unlawful detainer or similar dispossessory proceeding, (vi) to execute on behalf of Owner any documents necessary for the offer, listing, closing of sale and conveyance of real estate owned ("REO") property in accordance with the terms of the Statebridge Servicing Agreement; and (vii) to endorse checks made payable to the Owner. This limited power of attorney is not intended to extend the powers granted to Statebridge under the Statebridge Servicing Agreement or to allow Statebridge to take any action with respect to a Mortgage Loan not authorized by the Statebridge Servicing Agreement.

C.     Owner represents that any bank, title company, courts, governmental agencies, or other institutions may rely on this Limited Power of Attorney in honoring the acts of Statebridge hereunder.

D.     Statebridge hereby agrees to indemnify and hold the Owner, DHM and their respective directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by Statebridge of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney.

E.     This Limited Power of Attorney is entered into and shall be governed by the laws of the state of Colorado. To the extent permitted by other applicable law, the terms and provisions of this Agreement shall control in the event of any conflict between such terms or provisions.

Reception #: D1049767, 2 OF 2

F.    This Limited Power of Attorney shall terminate upon the earlier of (i) notice from the Owner of the termination of this Limited Power of Attorney or (ii) the termination of the Servicing Agreement and shall not apply to a Mortgage Loan that has been transferred into a security or otherwise conveyed to a third party by Owner.

IN WITNESS WHEREOF, the parties have executed this Limited Power of Attorney on the day and year first above written.

The Bank of New York Mellon Trust Company, National Association as grantor trustee of the Protium Master Grantor Trust

By: _Shantell Jones-Harris_

Name: _____Shantelle Jones-Harris_

Vice President

Title: Authorized Signatory

WITNESSES

By: _Emily R Sobkowiak_

Name    EMILY SOBKOWIAK

Title

By: _____

Name:

Title    mary keksler

STATE OF : Illinois

COUNTY OF  Cook          : ss.

On the 23 days September  2009, before me, a Notary Public in and for said State, personally appeared _Shantelle Jones-Harris of PNY Mellon_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the preceding instrument and acknowledged to me that they executed the same in their authorized capacities and that by their signatures on the instrument the persons or the entities upon behalf of which the persons acted, executed the instrument as of _September  23, 2009 10_

WITNESS my hand and official seal.

[SEAL: NOTARY PUBLIC OFFICIAL SEAL DANITA S GEORGE MY COMMISSION EXPIRES NOVEMBER 9, 2013]

_Danita S George_

Notary Public